## UNITED STATES FEDERAL DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No:  0:14-cv-60292

**TODD CHITOFF**
    **Plaintiff**

**v.**

**CASHCALL, INC., WS FUNDING, LLC**
**DELBERT SERVICES CORPORATION,**
**J. PAUL REDDAM AND CESAR GUZMAN**
    **Defendants.**


### SECOND AMENDED COMPLAINT FOR
### DAMAGES AND FOR INJUCTIVE RELIEF


Comes now Plaintiff Todd Chitoff by and through the undersigned counsel

and files this FIRST AMENDED COMPLAINT FOR DAMAGES AND FOR

INJUNCTIVE RELIEF and in furtherance states as follows:


**JURISDICTION AND VENUE**


1.  This is an action under 15 U.S.C.1692, the Fair Debt Collection

    Practices Act ("FDCPA"), and 47 U.S.C. § 227, the Federal Telephone

    Consumer Protection Act ("TCPA").

2. Subject matter jurisdiction in this Court proper pursuant to U.S.C. 15 § 1692k(d) and 28 U.S.C. §1331 which grant this Court original jurisdiction pursuant to a federal question relating to federal claims herein that arise under the FDCPA and TCPA.

3. This case also concerns the consumer-protection statutory and common law of the State of Florida. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and decide the related state law issues.

4. Venue is proper in this District because a substantial part of events or omissions giving rise to the claims occurred here and Defendants do business in Broward County Florida. (28 U.S.C. § 1391(b)(2)).

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and decide any related state law issues.

6. Delbert Services as a licensee of the Florida Department of Financial regulation consent to regulation in Florida courts.

7. Cashcall as licensee of the Florida Department of Financial regulation consent to regulation in Florida courts.

**PERSONAL JURISDICTION**

8. As detailed herein, the Defendants conspired to, and in fact did, violate the tort and criminal law of the State of Florida, and the tort law of the United States, within the State of Florida, by, among other things:

a. Loaning money at an illegal rate of interest in violation of Florida Loan Sharking Florida Statues 687.07;

b.    Engaging in various deceptive and unfair trade practices within the

State of Florida, including the above-referenced violation of 687.071;

attempting to collect on an illegal "debt" in violation of the Florida Unfair

and Deceptive Trade Practice Act (Florida Statue Ch. 501);  violating the

Federal Telephone Consumer Protection Act "TCPA", 47U.S.C.§ 227,

and Fair Debt Collection Practices Act 15 U.S.C.1692, via

communications directed into the State of Florida;

c.    Conspiring to violate the above-referenced statutes; and other via other

means.

9.    Defendant Reddam is, based on information and belief, the

"mastermind" of these illegal schemes. Defendants created

an interlocking scheme of contracts among themselves in

order to deceive customers and evade licensure.  Mr.

Reddam personally signed those contracts on behalf of his

100%-owned entity, CashCall Inc.  Mr. Reddam personally

received usurious interest from Mr. Chitoff.  On information

and belief, he did so via his 100%-owned entity, in violation

of Florida Statue 687.071, which makes it a crime to receive

such interest directly or indirectly.  Reddam knowingly and

willfully conspired with the WS Funding, Delbert Services

and Guzman and to charge or receive interest on the

extension of credit in excess of 45%.  He did so with

criminal intent

10.    Defendant Guzman, based on information and belief, personally

directed and oversaw the day to day operations of Delbert Services.

11. The corporate Defendants engage in extensive advertising activities within Florida in pursuit of their illegal scheme.

12. The corporate Defendants do business in Broward County Florida.

13. Jurisdiction is proper under Florida's long-arm statute, § 48.193, including ¶(1)(a), parts 1 and 2, and ¶(2).  These provisions provide jurisdiction over one who operates, conducts, engages in or carries on a business venture in Florida, or who commits a tort in Florida, for any cause of action arising therefrom; and over anyone engaged in substantial activities within Florida, regardless of whether the cause of action arose from those activities.

14. The above satisfy the minimum contacts necessary for personal jurisdiction under the due process clause of the United States Constitution.

15. Plaintiff, Todd Chitoff is a person who lives in Broward County, Florida.

16. Plaintiff has never been to South Dakota. Chitoff while sitting at home on his computer borrowed 1500 Dollars from defendants in response to an advertisement broadcast in Florida.

17. The Defendants individually and or working together committed tortious and criminal acts within Florida.

18. The Defendants engaged in extensive advertising activities within Florida on behalf of Western Sky Financial in furtherance of the illegal lending scheme.

19. Defendants engaged in substantial and not isolated activity in Florida.

20. On information and belief, Defendants regularly offered, made,

collected, are continuing to collect, and, attempted to collect, in excess of 6,000 illegal unsecured loans to Florida consumers were made by the Defendants.

21.  Defendants wrongfully assert that no State or Federal laws are applicable to them in relation to the Chitoff loan and other Florida consumer loans.

**PARTIES**

22.  Plaintiff, Todd Chitoff, is a natural person who lives in Broward County, Florida.

23.  Defendant John Paul Reddam (also known as J. Paul Reddam) is a citizen of California, residing in or around Sunset Beach, California. He may be found at 1600 South Douglas Road, Anaheim, California 92806. He is the ultimate owner, president and chief executive officer of Cashcall Inc., as well as subsidiary WS Funding.

24.  Defendant Cashcall is a California corporation with principal offices at 1600 South Douglass Road, Anaheim, California. Its president, sole owner, and sole member of its board of directors is Mr. Reddam.

25.  On information and belief, Cashcall is simply an alter ego or agent or instrumentality for Mr. Reddam

26.  Cashcall is engaged in the business of making or arranging high-interest loans to consumers over the internet, and also the servicing of such loans made by others (either as a purchaser, a servicer or otherwise).

27.  Cashcall is a licensed consumer finance company in Florida, license Number CF0900346.

28.  Defendant WS Funding LLC is a wholly owned subsidiary of

Cashcall.WS Funding LLC. Both WS Funding and Cashcall share the same address.

29.   On information and belief, WS Funding is simply an alter ego or agent or instrumentality for Mr. Reddam.

30.   Defendant Delbert Services Corporation ("Delbert Services") is a Nevada corporation, with its principal place of business located at 7125 Pollock Drive, Las Vegas, Nevada 89119. Mr. Reddam is its sole director and owner.

31.   Delbert Services Corporation is a Florida licensed consumer debt collection agency, license number CCA0900949.

32.   Defendant Cesar Guzman is Delbert Services president and chief executive officer. He may be found at 1900 South State College Boulevard, Suite 650,Anaheim, California. On information and belief, he is a citizen of California or Nevada.

33.   None of the defendants are chartered Florida banks.

34.   Defendants scheme to provide illegal, high-interest loans to consumers in Florida, and to collect illegal amounts of interest and charges on those loans.  Specifically, Cashcall, and or WS Funding have arranged for loans to be made through Western Sky Financial. While Cashcall, and WS Funding controlled and funded the entire lending process, the involvement of Western Sky Financial located on the tribal lands of Cheyenne River Sioux in the process was used as a ruse to attempt to confer the laws and jurisdiction of the Cheyenne River Sioux Tribe onto the loans, and by so doing illegally evade Florida law. Delbert accepts such loans for collection, notwithstanding their illegality in violation of

Florida Law

35. Western Sky Financial, a South Dakota corporate, not a member of an Indian tribe, offered Florida consumers including the Chitoff, usurious loans, through Western Sky Financial websites, and advertisements on radio and television.

36. WS Funding and or Cashcall funded numerous usurious Florida loans, including the Chitoff loan; further, the lending process and the adverting were controlled entirely by defendants WS Funding and Cashcall, under the direction of Mr. Reddam.

37. All loans, including the Chitoff Loan made by the Western Sky Financial, under this scheme, were illegal under Florida Law. Western Sky Financial does not hold a Florida Consumer Finance License, as it (Western Sky Financial) is required to have before making loans to Florida consumers.

38. Alternatively, the Chitoff loan and the other Florida Consumer loans are *defacto* Cashcall loans.

39. Even though Cashcall a licensed Florida lender; it is nonetheless, illegal for Cashcall to collect or attempt to collect 232.77% interest on a consumer loans.

40. Cashcall, and WS Funding entered into contracts with Western Sky Financial, so that (A) the entities controlled by Mr. Reddam would give funds to  Western Sky Financial to make high-interest loans to residents of Florida, (B) the loan would be purportedly transferred to WS Funding immediately after their origination, and (C) Cashcall would service or

collect payments on the loans. (D) Cashcall agreed to fully indemnify and fund Western Sky Financial (E) Cashcall controlled all the advertising related to the loans (F) Delbert Services was assigned to collect the purportedly defaulted loans, including the Chitoff loan. Under this plan, Cashcall, WS Funding assumed virtually all responsibility for the loans made, nominally, by Western Sky Financial. On information and belief Cashcall reviews all consumer applications for underwriting requirements prior to Western Sky Financial's funding of the loans.

41.   Cashcall provides website hosting, server maintenance, marketing services, and administrative support services to Western Sky.

42.   On information and belief Cashcall bears the risk of loss on the loans in that it is obligated to purchase the promissory notes from Western Sky and Cashcall has agreed to indemnify Western Sky for any liability associated with the business scheme.

43.   Mr. Reddam signed the agreements on behalf of WS Funding and Cashcall creating the plan as described in ¶ 40 above.

44.   The loans, including the Chitoff loan, supposedly made by Western Sky Financial were purportedly transferred immediately after they were made, back to WS Funding, according to the plans described in ¶ 40 above.

45.   Cashcall serviced usurious loans, including the Chitoff loan, and received payments made on the usurious loans including the Chitoff loan.

46. Cesar Guzman knew of the terms on which Western Sky Financial made loans no later than September 21, 2012.

47. Cesar Guzman directly, and knowingly oversaw collection the collection of debt by Delbert Services.

48. On Information and belief Delbert Services has regularly collected high-interest loans in excess of 100% interest purportedly owned by Cashcall, WS Funding or related parties, over a period of several years.

49. All defendants were on notice, all defendants knew that the loans were usurious, unenforceable and or void. The prior litigation includes several State enforcement actions.

50. All defendants knowingly, willfully with criminal intent disregarded the fact that the loans were usurious, unenforceable and or void.

51. All Defendants parties to the conspiracy are jointly and severable   liable for the actions of co-conspirators. *Hoch v. Rissman, Weisberg, Barrett*, 742 So.2d 451, 460 (Fla.Dist.Ct.Ap. 1999) (citing *Ford v. Rowland*, 562 So.2d 731 (Fla.Dist.Ct.App.1990)).

52. Plaintiff as a result of the acts done under the conspiracy suffered harm. The underlying debt is void.  Consumer lenders doing business in Florida are required to be licensed. It is a felony for a loan to carry an interest of 45 Percent. Consumer lenders may not charge in excess of 18%.

53. Western Sky Financial, LLC does not possess a license, as required by Florida Statues 560.403, to make consumer loans in Florida.

54.    Western Sky Financial LLC, since it is engaged in the business of

making consumer loans, is required to be licensed pursuant to Florida

Statue 516 provides as follows, in pertinent part:

> (1) A person must not engage in the business of making consumer finance loans unless she or he is authorized to do so under this chapter or other statutes and unless the person first obtains a license from the office.
> (2)(a) A person who is engaged in the business of making loans of money, except as authorized by this chapter or other statutes of this state, may not directly or indirectly charge, contract for, or receive any interest or consideration greater than 18 percent per annum upon the loan, use, or forbearance of money, goods, or choses in action, or upon the loan or use of credit, of the amount or value of $25,000 or less. (c) A loan for which a greater rate of interest or charge than is allowed by this chapter has been contracted for or received, wherever made, is not enforceable in this state, and each person who in any manner participates therein in this state is subject to this chapter.(¶2(b) omitted)

55.    Western Sky Financial, LLC is not exempt from the licensure requirement

56.    The interest rate charged on Plaintiff, Todd Chitoff's, loan was 232.77

percent.

57.    Florida licensing statutes reflect the states' strong public policy that

entities seeking to engage in the consumer-lending business with state

residents must be vetted and supervised by regulators to ensure that

they adhere to consumer- protection and other laws.

58.    Cashcall, Delbert Services and all other defendants knew or should have

known the debt they were attempting to collect was void because it

stemmed from an illegal contract both because the purported lender was not licensed in Florida and because Florida Law prohibits charging in excess of 18% interest.

59.   Moreover, the contract that created the alleged debt, the contract between the lender and Chitoff is void *ab initio*.

### Additional Factual Allegations

60.   Plaintiff is a "consumer" as defined by 15 U.S.C.§1692a(3).

61.   Plaintiff used the proceeds from the loan primarily for personal, family or household purposes.

62.   Delbert Services is a debt collector as defined in 15 U.S.C.§ 1692a(6). Delbert collects or attempts to collect debts due to third parties as part of its business and regularly engages in the consumer debt collection.

63.   Delbert Services attempted to collect the consumer debt and as such engaged in "communications" as that term is defined in 15 U.S.C. §1692a(2) of the FDCPA.

64.   The FDCPA calls for strict liability, which means "a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages."

65.   Plaintiff suffered actual damages.

66.   Plaintiff is entitled to an award of attorney fees and costs pursuant to 15 U.S.C 1692(k).

67.  J. Paul Reddam knew or should have known about the practices of Cashcall, WS Funding, and Delbert Services as described herein.

68.  Cesar Guzman knew or should have known about the practices of Cashcall, WS Funding, and Delbert as described herein.

69.  Plaintiff, Todd Chitoff entered into an arrangement where he borrowed 1500 dollars from Western Sky sometime around April 3 2013 where approximately $1000 was deposited into Plaintiff's checking account loan number 261919039.  Chitoff made at least two payments to Cashcall in an effort to repay the loan.

70.  Plaintiff received in Florida multiple collection letters from Cashcall demanding repayment of loan number 261919039

71.  Plaintiff received multiple telephone calls in Florida from Cash Call demanding repayment of loan number 261919039

72.  On July 1, 2013 Plaintiff received a collection letter from Cashcall demanding repayment of loan number 261919039 for the total amount due of 455.38 or 396.38 in principal and interest.

73.  Cashcall in the July 1, 2013 letter clearly indicates the Chitoff loan is now in default.

74.  In the July 1, 2013 letter Cashcall advises Chitoff that the only acceptable forms of payment now that the loan is in default are MoneyGram, money order, or certified check.

75.  Cashcall had no basis to demand that payment only be made in the form of MoneyGram, money order, or certified check.

76. Cashcall's use of baseless restrictions concerning the mode of repayment harmed the plaintiff.

77. On July 3, 2013 Plaintiff received a collection letter from Cashcall, regarding loan number 261919039. In this July 3, 2013 letter from Cashcall, the loan purportedly made by western Sky Financial is referred to as " *your Cashcall loan*". (Italics added)

78. Cashcall by referring the loan allegedly made by Western Sky Financial as your Cashcall loan left the Plaintiff in doubt as to who the lender truly was.

79. On August 6, 2013 Cashcall sent a collection letter regarding loan number 261919039 advising Plaintiff that the balance was now $2188.24 and asking that he start making payments.

80. On September 7, 2013 Cash Call sent a collection letter regarding loan number 261919039 advising Plaintiff that the balance was now $2404.23 and asking that he start making payments.

81. On September 17 Cash Call sent a collection letter regarding loan number 261919039 advising Plaintiff that the balance was now $2498.91 and asking that he start making payments.

82. Plaintiff received multiple other collection letters from Delbert Services demanding repayment of loan number 261919039 including one on November 7, 2013 where Delbert Services sent a collection letter to Plaintiff regarding loan number 261919039 advising him that Western

Sky had placed the debt with Delbert for collection demanding payment of $2823.24.

83.     Plaintiff received numerous collection letters from Delbert Services demanding repayment of the purported Western Sky loan.

84.     Plaintiff received numerous collection phone calls from Delbert Services demanding repayment of the purported Western Sky loan.

85.     The Plaintiff believes that the following voice mail message was left by or at the direction of either Delbert Services or Cash Call in regard to the purported Western Sky Loan.

> This message is intended for Todd Chitoff of this is Anthony (inaudible) give me a call here from A-1 Courier Services I'm actually giving you a second call follow up with you in regards to some filing I received my office ... with your name your social security number attached I have a ... as I stated prior in the prior message I have a request here to put you on my schedule all right.... sign a certified notice of intent regarding your pending claim being filed against you my call today is to make sure you did indeed receive your information properly in regards to this claim all since I have not heard anything differently wanted to confirm that you are indeed placed on my schedule to be served tomorrow between 12 and 5. (I) Will be stopping by to present (at your) place of employment if you have any questions I would advise you to direct those questions to the filing party I was the number for you to get in contact with them at (888) 503-7259 and also listen the extension is extension 508 and the claim number is 200828FL. Yeah, you have been notified, unless I hear something differently from the filer, (I will) probably be seeing you tomorrow, goodbye.

86.   Delbert Services and Cashcall hid their true identity when placing telephone call to Plaintiff in order to gain an advantage with their unlawful collection activities as described herein.

**Additional Allegations Regarding Dispute Resolution Provisions**

87.   On information and belief, Defendants intend to interpose certain dispute-resolution provisions from the contract between Plaintiff and Defendants alleged predecessor-in-interest, Western Sky Financial, LLC (a South Dakota limited liability).  These are the forum selection/choice of law and arbitration provisions.  On information and belief, these provisions are the result of fraud and overreaching, are misleading, are deceptive, and were placed in the contract due to improper motives and for improper purposes, including bad-faith motives and purposes, specifically including but not limited to discouraging borrowers from pursuing legitimate claims.

88.   On information and belief, the drafter(s) of the contracts intended these provisions to be deceptive, fraudulent, to overreach, and to mislead.

89.   On information and belief, Defendants Reddam, CashCall, Guzman and Delbert Services knew these provisions were deceptive at the time the contracts were initially formed; at the time of the last revision of the contract prior to the contracting with Plaintiff; at the time of the contracting with Plaintiff; and throughout the times that Defendant Delbert Services and Guzman attempted to collect on Mr. Chitoff's "debt."

90.   Specifics include that the Defendants, all of them, knew (a) that the Tribe did not conduct mediation; (b) that the Tribe did not appoint a tribal representative to conduct arbitration; and (c) that the tribe has no consumer-dispute rules.

91.   Additional specifics include that the Defendants, all of them, at all relevant times,

a.   knew that the tribe has no jurisdiction to adjudicate their dispute with Mr. Chitoff;

b.   knew that the repeated references to the "Indian Commerce Clause" are misleading and deceptive;

c.   intended, if suit were brought, to rely on federal law regarding arbitration even while the contract states that no federal law applies;

d.   knew that the statements in the contract denying the applicability of federal law were false;

e.   knew that the phrase that Western Sky Financial, LLC, is "a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation" is misleading in that neither the Tribe nor the "Tribal Nation" have any laws authorizing lenders;

f.   knew that the business scheme described in this Complaint constituted an unfair or deceptive act or practice and was used as a shield to evade licensure from the relevant authorities by exploiting Indian Tribal Sovereign Immunity;

g.   knew that the conduct permitted by the arbitration provisions in this contract could never satisfy the straightforward definition in Black's Law

Dictionary of what an "arbitrator" is supposed to be;

h. knew that the reference to "Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement" has the effect of leading the reader to conclude that the Tribe is so concerned about providing fairness to small borrowers such as the customers sought by Western Sky Financial and the Defendants that it conducts arbitration, appoints a representative, and has taken care to craft consumer dispute rules, and thus reducing objections to the forum selection/choice of law provision; that the reference to being an "authorized" lender similarly indicates a substantial tribal concern with fairly regulating such contracts and thus supports the conclusion immediately above;

i. knew the contract was false and misleading in other ways

j. intended these clauses to have the effects described above; and

k. intended these provisions to discourage borrowers from pursuing legitimate claims.

92. In the alternative, the Defendants, all of them, exhibited reckless indifference to the truth of the contract's representations discussed in paragraphs 87-91 above and the impact of these representations on readers; in the alternative, they exhibited gross negligence in failing to verify the accuracy of the statements and/or failing to properly consider the impacts on readers. In the alternative, they exhibited negligence in so failing. Defendants Reddam and CashCall further did so in

proceeding to work with Western Services LLC in connection to the loans; Defendants Guzman and Delbert Services further did so in proceeding to work with Defendants Reddam/CashCall in connection with the loans.

93.  In the alternative, Defendants failed to undertake reasonable steps to determine the truth or falsity of the matters asserted in the contract stated in the paragraph immediately above, and similarly, failed to take commercially reasonable steps to do so.

94. On information and belief, Defendants Reddam,  CashCall, Guzman and Delbert Services, with Defendant Reddam taking the leading role, created these contracts or had these contracts created with full knowledge of the above and with intent that the provisions have the effects described above.

95. In the alternative, Defendants Reddam,  CashCall, Guzman and Delbert Services, with Defendant Reddam did so negligently.

96. In the alternative, Defendants Reddam,  CashCall, Guzman and Delbert Services, with Defendant Reddam did so with gross negligence.

97. In the alternative, Defendants Reddam,  CashCall, Guzman and Delbert Services, with Defendant Reddam did so with reckless disregard for the truth or falsity of the matters asserted in the contracts.

98. Further, the contractual terms pertaining to dispute resolution are so inconsistent, contradictory, and/or vague that there could be no meeting of minds.

99. The terms are therefore void, voidable, and/or unenforceable.  In the alternative, it is in the discretion of the Court to refuse to give effect to such terms.

100.   Moreover, regardless of any knowledge or intent, the terms are unenforceable on their substance, including the fact that, on information and belief, the Tribe cannot have jurisdiction over this dispute, and the fact that the arbitration process described in the contract does not exist.

**Count One as to All Defendants**
**Violations of Florida Deceptive and Unfair Trade Practices Act Florida Statues Ch. 501 (FDUTPA)**

101.   Plaintiff hereby incorporates by reference all the allegations contained in all of the preceding paragraphs of this complaint as though fully stated herein.

102.   The substantial financial injury caused by Defendants' taking money that they were and are not legally entitled to collect, or that consumers were and are not obligated to pay, is not outweighed by any benefit to consumers or to competition.

103.   Defendants further prevented consumers from reasonably avoiding the harm by failing to inform consumers that state law had voided all or part of the loans or the consumer's obligation to repay them and by misrepresenting that the Western Sky Loans were not subject to Florida law.

104.   The Plaintiff did not understand that Cashcall phone messages and letter concerned the purported Western Sky loan.

105.   FUTPA broadly declares in §501.204(1) that "[u] nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" re violations of the Act. Florida courts have adopted and applied in various contexts a broadly worded standard of unfairness under which a practice is unfair, "if it offends public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." An act or practice is unfair if it causes or is likely to cause consumers substantial injury, which is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition.

106.   Defendants have caused and are likely to cause substantial injury which is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition by servicing, extracting payments for, and collecting on those consumer loans, including the Chitoff loan or portions of the loans that Florida laws render void or limit the consumer's obligation to repay.

107.   The defendants violated FUTPA by sending billing notices and other notices informing Chitoff and other consumers that Cashcall and Delbert Services acquired collection rights to Chitoff's loans and other consumer loans, initiating ACH debits to take payments from Chitoff's bank accounts, and other Florida consumer bank accounts and demanding payments from Chitoff and other Florida consumers in dunning letters and other communications; Defendants have represented, expressly or impliedly, that the entire loan balance was owed to them, that they were legally authorized to collect the

associated payments, and that consumers were legally obligated to pay the full amount collected or demanded.

108.    Chitoff and other Florida consumers generally do not know or understand the impact that the usury and licensing laws of Florida have on their loans. Chitoff and other consumers who obtained loans from the defendants in Florida, where usury laws or consumer- licensing regimes rendered those loans void, or otherwise limited the consumer's obligation to repay them, typically lacked an understanding that those Florida laws voided Defendants' collection rights on all or part of the consumers' repayment obligations.

109.    By nevertheless taking, or attempting to take, the full loan balance from those consumers, Defendants took unreasonable advantage of consumers' lack of understanding about the impact of applicable Florida laws on the parties' rights and obligations regarding the defendant loans.

110.    Defendants action are unfair abusive and deceptive likely to cause consumers substantial injury, which is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition; Therefore violate FUTPA.

111.    Any violation of any consumer protection statue is per se violation of FUTPA.

112.    Therefore by violation of consumer protection statues as indicated herein above and here in below defendants have violated the FUTPA.

113.    Plaintiff is entitled to an award of attorney's fees and cost

pursuant to FUTPA , at §501.2105.


**Count Two as to All Defendants**
**For Violations of Florida Loan Sharking Florida Statues 687.071**

114.    Plaintiff hereby incorporates by reference all the allegations

contained in all of the preceding paragraphs of this complaint as though

fully stated herein.

115.    On information and belief Western Sky Financial held itself as

stand alone company.

116.    Cashcall, WS Funding, Delbert Services, J. Paul Reddam and

Caesar Guzman and or any grouping of the afore referenced

defendants working together as a group are "persons" as defined in

Florida Statue 101(3).

117.    Florida Statue 687.071, the criminal usury, loan sharking states in

the relevant sections:

> (1)(f) "Loan shark" means any person as defined herein
> who lends money unlawfully under subsection (2),
> subsection (3), or subsection (4).
> (g) "Loan sharking" means the act of any person as
> defined herein lending money unlawfully under
> subsection (2), subsection (3), or subsection (4).
> (2) Unless otherwise specifically allowed by law, any
> person making an extension of credit to any person,
> who shall willfully and knowingly charge, take, or
> receive interest thereon at a rate exceeding 25
> percent per annum but not in excess of 45 percent

per annum, or the equivalent rate for a longer or shorter period of time, whether directly or indirectly, or conspires so to do, commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

(3) Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

118.    Cashcall knowingly took a least two payments from Plaintiff Todd Chitoff's checking account in repayment of Chitoff's loan carrying a stated interest rate of over 200%.

119.    J Paul Reddam owns and controlled the actions of Cashcall and WS Funding.

120.    Reddam knowingly and willfully conspired with the WS Funding, Cashcall, Delbert Services and Guzman and to charge or receive interest on the extension of credit in excess of 45%.

121.    WS Funding, Cashcall, J Paul Reddam and Guzman are guilty of a felony for charging and receiving payment upon a loan in excess of 45%

122.    Loans made in violation of law usury Laws are void and uncollectable (Florida Statues 687.071)

123.    The loans, including the Chitoff loans were made by the defendants acting in concert as discussed in ¶ 40above.

124.    Working together as a group WS Funding, Cashcall, Reddam, Delbert Services, and Guzman directly or indirectly willfully and knowingly charge or received interest on the extension of credit in excess of 45% (it was 232.77% interest) and willfully and knowingly conspired to do so.

125.    Reddam knowingly, willfully with criminal intent conspired with WS Funding Cashcall, and Western Sky Financial to indirectly to charge or received interest on the extension of credit in excess of 45% (it was 232.77% interest)

126.    WS Funding, Cashcall, J Paul Reddam, Delbert Services and Caesar Guzman are guilty of a felony in for indirectly charging and receiving payment upon a loan in excess of 45%

127.    WS Funding, Cashcall, J Paul Reddam Delbert Services and Guzman are not otherwise specifically allowed by law to seek interest at a rate of greater than 200 % from any Florida consumer or Plaintiff, Todd Chitoff.

128.    WS Funding funded Chitoff's loan. The lending process was controlled entirely by Cashcall and or WS Funding, under the direction of Mr. Reddam.

129.    All loans including the Chitoff loan made by Western Sky, under Defendants scheme, were illegal under Florida law.

130.    WS Funding, Cashcall, J. Paul Reddam, Delbert Services and or Guzman individually or as a group with criminal intent received the proceeds of the illegal usurious loans though a pattern on charging and

collecting high interest loans.

131.     On information and belief, WS Funding and Cashcall serviced 6000 or more Western Sky Financial loans in Florida under terms similar to plaintiff Todd Chitoff's loan and all charging in excess of 100% interest.

132.     Reddam, Guzman WS Funding and Cashcall all knew it is criminal to charge, collect or receive in excess of 100 % interest on consumer loans in Florida.

133.     All defendants knew that Western Sky Financial is not a licensed consumer finance company in Florida.

134.     Defendants funded, serviced and conspired to extract interest of 200 % interest from the Plaintiff injured Chitoff.

135.     By violating the loan sharking rule, defendants conduct is a per se violation of FUPTA.

136.     Plaintiff is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts Fla. Stat Ch. 772; Fla. Stat Ch. 772.104

**Count Three as to Defendant Delbert Services**
**For violation of 15 U.S.C. 1692e(11)**

137.     Plaintiff hereby incorporates by reference all the complaint as though fully stated herein.

138.    Delbert Services is a debtor collector as defined in 15 USC

1692a(6). Chitoff's loan was funded on April 3, 2013 and was in

according to defendants default on about June 1, 2013.

139.    Any interest of Delbert Service in Chitoff's loan was acquired on

or about November 7, 2014 nearly six months after the date

defendants state the loan was in alleged to be in default.

140.    Defendant received a dunning letter dated November 7, 2014

sent by Delbert Service to the plaintiff's home address in Florida,

which states in part:

> WS Funding, LLC. (Serviced by Cashcall, Inc.) is the
> current creditor of the account referenced  above and
> has placed your Western Sky Financial a account
> number 2619039 with our office along with all servicing
> rights for collection of the outstanding balance listed
> above.

141.    It is unclear from the November 7, 2014 letter what is meant

by "all serving rights for collection".

142.    Delbert Services fails to Identify itself as a " debt collection in

violation of 15 USC 1692(e)11 in the phone calls place to plaintiff.

143.    Delbert Services attempts to collect a debt due another, either

Cashcall or WS Funding. Alternatively Delbert Services is part of a

criminal conspiracy with all other named defendants.

144.    The court must use the least sophisticated consumer standard

as articulated by case law, in analyzing a consumer collection

letter.

145.    Nowhere in Delbert Services November 7 2014 letter does

Delbert Service identify itself as a debt collector. The language "

placed with our office… With all servicing rights for collection" fails to

meaningfully identify Delbert Services as a debt collector.

146.    Plaintiff received numerous calls to his cell phone from Delbert

leaving messages all of which are similar to the following message left

on Plaintiff's Voice Mail:

> Hi this message is from Delbert service corporation
> and we're trying to get in touch with you please
> return our call today at 1 (888) 400-7750 this is an
> important matter so please take a moment and give
> us a call today this is time sensitive once again the
> number is 1 (888) 400-7750 thank you and we look
> forward to our conversation.

147.    The message left by Delbert Services fails to meaningfully

identify Delbert Services as a Debt Collect.

148.    A consumer debt collector must meaningfully identify

themselves as debt collector in all communications with debtor in

all I communications from the debt collector.

149.    In the November 7, 2014 letter Delbert Services fails to

Identify it self as a debt collector in violation of 15 USC 1692(e)11.

150.    In other letters Delbert Services fails to Identify it self as a

debt collector in violation of 15 USC 1692(e)11.

151.    Delbert Services fails to Identify itself as a " debt collection

in violation of 15 USC 1692(e)11 in the phone calls placed to

plaintiff.

152.    Plaintiff is entitled to 1000 Dollars in statutory Damages and

attorney fees and costs 15 USC 1692(k)


**Count Four as to Delbert Services**
**For Violations Of The FDCPA, 15 U.S.C. § 1692e**

153.    Plaintiff hereby incorporates by reference all the allegations

contained in all of the preceding paragraphs of this complaint as though

fully stated herein.

154.    A debt collector violates 15 U.S.C. § 1692e of the FDCPA if the

debt collector engages in any "false, deceptive, or misleading

representation or means in connection with the collection of any debt,"

including: falsely representing "the character, amount, or legal status of

any debt"; uses any "false representation or deceptive means to collect

or attempt to collect any debt; or, communicates to any person credit

information which is known or which should be known to be false."

155.    In connection with Delbert Service actions in their attempts to

collect, through debt collection letters, defaulted consumer loan debt

from Plaintiff by adding an unauthorized amount of interest, late charges

and other charges that are not permitted by law, the Defendants used

"false, deceptive, or misleading representation or means in connection

with the collection of any debt," in violation of 15 U.S.C. § 1692e.

156.    Defendant Delbert Services actions in their attempts to collect,

through debt collection letters, purportedly defaulted consumer loan

debt from

Plaintiff by attempting to collect a debt all Defendants knew or should have known was void, the Defendant used "false, deceptive, or misleading representation or means in connection with the collection of any debt," in violation of 15 U.S.C. § 1692e.

157.    A debt collector violates 15 U.S.C. § 1692e(2)(A) of the FDCPA if the debt collector uses any "false, deceptive, or misleading representation or means in connection with the collection of any debt," including, "falsely representing the character, amount, or legal status of any debt."

158.    In connection with Defendant's actions in its attempts to collect, through debt collection letters, alleged defaulted consumer loan debt from Plaintiff by adding an unauthorized amount of interest, late charges and other charges that was not permitted by law, the Defendant falsely represented the debt's character, amount, or legal status in violation of 15 U.S.C. § 1692e(2)(A) of the FDCPA.

159.    Defendant, Delbert Services, actions in its attempts to collect, through debt collection letters, alleged defaulted consumer loan from Plaintiff that Delbert Service knew or should have known the loan was void hence, falsely represents the debt's character, amount, or legal status in violation of 15 U.S.C. § 1692e(2)(A) of the FDCPA.

160.    A debt collector violates 15 U.S.C. § 1692e(8) of the FDCPA if the debt collector uses any "false, deceptive, or misleading representation or means in connection with the collection of any debt," including

communicating "to any person credit information which is known or which should be known to be false."

161.     In connection with Defendant Delbert Services actions in its attempts to collect alleged defaulted loan debt from Plaintiff by adding an unauthorized amount of interest, late charges and other charges that was not expressly authorized by the agreement creating the debt or permitted by law, Defendants, communicated "to any person credit information which is known or which should be known to be false" in violation of 15 U.S.C. § 1692e(8) of the FDCPA.

162.     A debt collector violates 15 U.S.C. § 1692e(10) of the FDCPA if the debt collector uses any "false, deceptive, or misleading representation or means in connection with the collection of any debt," including, "any false representation or deceptive means to collect or attempt to collect any debt.

163.     In connection with Defendant Delbert's actions in their attempts to collect, through debt collection letters, an alleged defaulted loan from Plaintiff by adding an unauthorized amount of money that was not permitted by law, the Defendant's Cashcall and Delbert Services' actions constituted the use of "any false representation or deceptive means to collect or attempt to collect any debt." in violation of 15 U.S.C. § 1692e(10) of the FDCPA.

164.     Defendant, Delbert Service, actions in its attempts to collect, through debt collection letters, a purportedly defaulted loan from Plaintiff by attempting to collect a debt they knew or should have

known was void, the Defendants actions constituted the use of "any false representation or deceptive means to collect or attempt to collect any debt." in violation of 15 U.S.C. § 1692e(10) of the FDCPA.

165.    Defendant Delbert Services practice of attempting to collect, through debt collection letters, alleged defaulted consumer loan debt from Plaintiff adding an unauthorized amount of interest, late charges and other charges that was not permitted by law, and or attempting to collect debt Defendant Delbert Services knew or should have known to be void violates 15 U.S.C. §§ 1692e, 1692e(2) (A), 1692e(8), and 1692e(10) of the FDCPA.

166.    By failing to identify itself as a debt collector in it calls and letter Delbert Services violated 15 U.S.C.1692e (11)

**Count Five as to Delbert Services**
**Violation Of The FDCPA, 15 U.S.C. § 1692f**

167.    Plaintiff hereby incorporates by reference all the allegations contained in all of the preceding paragraphs of this complaint as though fully stated herein.

168.    A debt collector violates 15 U.S.C. § 1692f of the FDCPA if the debt collector uses "unfair or unconscionable means to collect or attempt to collect any debt", including "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

169.    In connection with Defendant's actions in its attempts to collect,

through debt collection letters, alleged defaulted loan debt from

Plaintiff by threatening to including an unauthorized amount of money

not permitted by law, Defendant used "unfair or unconscionable means

to collect or attempt to collect any debt" in violation of 15 U.S.C. §

1692f of the FDCPA.

170.    In connection with Defendant's actions in its attempts to collect,

through debt collection letters, defaulted consumer loan debt from

Plaintiff by attempting to collect a debt Delbert Server knew or should

have known was void, Defendants Cashcall and Delbert used "unfair or

unconscionable means to collect or attempt to collect any debt" in

violation of 15 U.S.C. § 1692f of the FDCPA

171.    A debt collector violates 15 U.S.C. § 1692f(l) of the FDCPA if the

debt collector engages in the collection of any amount (including any

interest, fee, charge, or expense incidental to the principal obligation)

unless such amount is permitted by law.

172.    In connection with Defendant Services actions in its attempts to

collect, through debt collection letters, defaulted consumer loan from

Plaintiff by threatening to add an unauthorized amount of money

"because of interest, late charges and other charges" that was not

authorized by the agreement creating the debt or permitted by law, the

Defendant engaged in "the collection of any amount (including any

interest, fee, charge, or expense incidental to the principal obligation)

unless such amount is expressly authorized by the agreement creating

the debt or permitted by law" in violation of 15 U.S.C. § 1692f(l) of the

FDCPA.

173.    In connection with Defendant Delbert Services actions in their attempts to collect, through debt collection letters, defaulted consumer loan debt from Plaintiff by attempting to collect a debt Cashcall and Delbert Services knew or should have known was void, the Defendant, Delbert Services engaged in the collection of an amount not permissible under the law in violation of 15 U.S.C. § 1692f(l) of the FDCPA.

174.    Defendant Delbert's practice of attempting to collect, through debt collection letters, defaulted Consumer loan debt from Plaintiff by adding or attempting to collect an unauthorized amount of money not permitted by law, violates 15 U.S.C. §§ 1629f and 1692f(l) of the FDCPA.

175.    Defendant Delbert Services practice of attempting to collect, through debt collection letters, defaulted consumer loan debt from Plaintiff by attempting to collect a debt Delbert Services knew or should have known was void, violates 15 U.S.C. §§ 1629f and 1692f(l) of the FDCPA.

**Count Six as to Defendants Delbert Services and Cashcall, Inc.
For Violations Of The TCPA 47 USC § 227**

176.    Plaintiff hereby incorporates by reference all the allegations contained in all of the preceding paragraphs of this complaint as though fully stated herein.

177.    In an effort to collect a purported debt Defendant, Cashcall, left numerous messages on Plaintiff's cell phone using a prerecorded voice.

178.    Plaintiff received many prerecorded calls from both Delbert and Cashcall all to his cell phone demanding repayment of the Western Sky Financial loan.

179.    As defined in the TCPA, Delbert Service did not have a existing business relationship with Plaintiff.

180.    As defined in the TCPA, Cashcall did not have a existing business relationship with Plaintiff.

181.    Cashcall and Delbert Services do not have valid contractual authority that would allow them to contact the Plaintiff in a manner that would be otherwise prohibited under the terms of the TCPA.

182.    Delbert Services and Cashcall delivered numerous voicemail messages and telephone calls to Plaintiff using an artificial or pre-recorded voice.

183.    Upon information and belief, Delbert and Cashcall placed numerous telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system.

184.    Neither, Delbert nor Cashcall placed any telephone calls to Plaintiff for emergency purpose.

185.    Each and every telephone call Delbert and Cashcall placed to Plaintiff was for commercial purpose.

186.    Neither defendants Cashcall nor Delbert have an established business relationship with Plaintiff under the terms of the TCPA.

187.    Neither Delbert Services nor Cashcall had Plaintiff's prior valid express consent to make telephone calls to Plaintiff's cellular telephone number. Any claim of consent originates from an illegal, void contract

188.    Upon information and belief, both Delbert and Cashcall placed the telephone calls to Plaintiff, Todd Chitoff, voluntarily or willfully.

189.    Neither Delbert nor Cash Call placed the calls for charitable or political purposes.

190.    Upon information, belief, and a common sense understanding of Defendants business practices, Delbert and Cashcall used an automatic telephone dialing system to make and, or place each of the telephone calls identified above.

191.    Upon information, belief, and Delbert and Cash Call had knowledge that it was using an automatic telephone dialing system to make and or place each of the telephone calls identified above.

192.    Upon information and belief, Delbert Services and Cashcall intended to use an automatic telephone dialing system to make and, or place each of the telephone calls identified above

193.   Upon information and belief, Delbert and Cashcall had knowledge that it was leaving voicemail messages using an artificial or prerecorded voice in each of the telephone calls identified above.

194.   Upon information and belief, Delbert Services and Cashcall intended to leave voicemail messages using an artificial or prerecorded voice in each of the telephone calls identified above.

195.   Upon information and belief, Delbert Services and Cashcall maintains business records that show all calls Defendants placed to Plaintiff's cellular telephone number and indicate to use of an automatic dialing system.

196.   Upon information and belief most of the calls in connection with Delbert and Cashcall's collection efforts were made using voice over Internet protocols to block or transmit misleading caller identification.

197.   Delbert Services and Cashcall's intent was to hide their true identity in order to gain an advantage with their unlawful collection activities as described herein.

198.   Delbert and Cashcall violated 47 U.S.C. 227(b)(1)(A)(iii) by placing non- emergency calls to Plaintiff's cellular telephone, without the prior express consent of Plaintiff, using an automatic telephone dialing system and or an artificial or pre-recorded voice.

199.   Delbert and Cashcall violated 47 U.S.C. 227(b)(1)(A)(i) and 47 U.S.C. 227(b)(1)(B) by placing non-emergency calls to Plaintiff's cellular telephone, without the prior express consent of Plaintiff, using an

automatic telephone dialing system and, or an artificial or pre-recorded voice.

200.    Delbert Service and Cashcall violated 47 U.S.C. 227(e) by knowingly transmitting misleading or inaccurate caller identification with intent to wrongfully recover payment on Plaintiff Todd Chitoff's loans.

201.    Transmitting misleading or inaccurate caller identification with intent to wrongfully recover payment on Consumer loans in violation of 47 U.S.C. 227(e) is a per se violation of FUTPA (as described in Count One above)

202.    Plaintiff seeks actual, statuary damages, treble damages for willfully violations and injunction relief under 47 USC (b)3(B)

**Trial by Jury**

203.    Plaintiff demand a trial by Jury as provided for in Federal Law.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against defendants and in favor of the plaintiff as follows:

A.    That the Plaintiff be awarded statutory damages;

B.    That the Plaintiff be awarded punitive damages for willful and knowing violations;

C.    That the Plaintiff be awarded the expenses of litigation including a reasonable attorney fee;

D.   That the Court issue an injunction ordering Defendants to cease unlawful

collection activities;

E.   That the Court enjoins Defendants from making unlawfully collection calls

to debtors cell phones using a prerecorded voice and inaccurate caller

identification information;

F.   That the Court grants such further and additional relief as is just.

Dated:  June 26, 2014

Respectfully Submitted, By:

// Jonathan Z Kantor//

Jonathan Z. Kantor
Florida Bar #103993
Law Office of Jonathan Z. Kantor, P.A.
304 Indian Trace # 117
Weston, FL33326
Phone 305 375 9119
FAX 866 395 1057
jzkantor@yahoo.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing First Amended

Complaint, was served by EM/ECF and email, on this June 26, 2014 on all counsel

or parties of record on the service list.

//Jonathan Z. Kantor//

**SERVICE LIST**
**Case No. 14-60292**

CHRISTOPHER S. CARVER
AKERMAN LLP
One S.E. Third Avenue — 25th Floor
Miami, FL 33131-1714
Tel. 305-374-5600
Fax 305-374-5095
christopher.carver@akerman.com

ERIKA R. SHUMINER
AKERMAN LLP
One S.E. Third Avenue — 25th Floor
Miami, FL 33131-1714
Tel. 305-374-5600
Fax 305-374-5095
erika.shuminer@akerman.com

Brian J. Fischer, Esq.
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Tel.: 212-891-1681
Fax: 212-909-0881
BFischer@jenner.com

Katya Jestin, Esq.
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Tel.: 212-891-1681
Fax: 212-909-0881
E-mail: KJestin@jenner.com

Neil Barofsky

JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Tel.: 212-891-1681
Fax: 212-909-088
NBarofsky@jenner.com